**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ORCKIT CORPORATION, | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | C.A. No. 23-822 (MN) |
| | : | |
| JUNIPER NETWORKS, INC., | : | |
| | : | |
| *Defendant*. | : | |

**OPENING BRIEF IN SUPPORT OF DEFENDANT JUNIPER NETWORKS, INC.'S**
**PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 1

A. The ’821 Patent .......... 1

B. Orckit’s May 2017 Letter .......... 3

III. LEGAL STANDARD .......... 3

IV. ARGUMENT .......... 4

A. The ’821 Patent Claims Ineligible Subject Matter Under 35 U.S.C. § 101. .......... 4

1. *Alice* Step One: The ’821 Patent Is Directed to the Abstract Idea of Selecting and Switching Among Network Routes Based on Availability or Cost. .......... 5

2. *Alice* Step Two: The ’821 Patent Claims Do Not Recite an Inventive Concept. .......... 8

3. Dependent Claims 15 and 16 .......... 12

B. The Court Should Dismiss Orckit’s Pre-Suit Indirect and Willful Infringement Claims for Failure to State a Claim .......... 13

V. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Alice Corp. Pty. V. CLS Bank Int'l*,
573 U.S. 208 (2014)........ *passim*

*All Terminal Servs., LLC v. Roboflow, Inc.*,
C.A. No. 25-476-WCB, 2025 WL 2576394 (D. Del. Sept. 5, 2025)........11

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
788 F.3d 1371 (Fed. Cir. 2015)........11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........4, 14

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
133 S. Ct. 2107 (2013)........4

*B# on Demand LLC v. Spotify Tech. S.A.*,
484 F. Supp. 3d 188 (D. Del. 2020)........9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........4, 14

*Beteiro, LLC v. DraftKings Inc.*,
104 F.4th 1350 (Fed. Cir. 2024) ........5, 7

*Broadband Itv, Inc. v. Amazon.com, Inc.*,
113 F.4th 1359 (Fed. Cir. 2024) ........7

*BSG Tech LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018)........10

*CG Tech. Dev., LLC v. William Hill U.S. Holdco, Inc.*,
404 F. Supp. 3d 842 (D. Del. 2019)........15

*Cleveland Med. Devices Inc. v. ResMed Inc.*,
696 F. Supp. 3d 4 (D. Del. 2023)........14

*Commil USA, LLC v. Cisco Sys., Inc.*,
575 U.S. 632 (2015)........13

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014)........12

*Densys Ltd. V. Align Tech. Inc.*,
C.A. No. 25-768-GBW, 2026 WL 1506566 (D. Del. May 29, 2026) ....................................13

*Dialect, LLC v. Bank of Am., N.A.*,
No. 2:24-cv-207-JRG, 2024 WL 4980794 (E.D. Tex. Dec. 4, 2024)....................................13

*Digital Media Tech. Holdings, LLC v. Deluxe Media Inc.*,
C.A. No. 25-38-JCG, 2025 WL 2720958 (D. Del. Sept. 24, 2025).........................................2

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
815 F. App'x 529 (Fed. Cir. 2020) ..................................................................8, 10, 12

*Duvall Espresso IP Enf't, LLC v. Meticulous Home, Inc.*,
C.A. No. 24-22-CJB, 2026 WL 578768 (D. Del. Mar. 2, 2026) ............................................13

*Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.*,
C.A. No. 19-1239-CFC, 2020 WL 4365809 (D. Del. July 30, 2020)....................................14

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
958 F.3d 1178 (Fed. Cir. 2020)...........................................................................................10

*Elec. Power Grp. LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016).......................................................................................5, 11

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)...............................................................................................5

*GoTV Streaming, LLC v. Netflix, Inc.*,
166 F.4th 1053 (Fed. Cir. 2026) ............................................................................................7

*In re Healy*,
No. 2024-2311, 2025 WL 2248967 (Fed. Cir. Aug. 7, 2025) ................................................10

*In re Killian*,
45 F.4th 1373 (Fed. Cir. 2022) ..............................................................................................11

*Lightning Fitness Sys. LLC v. Precor Inc.*,
C.A. No. 24-12-RGA, 2025 WL 662082 (D. Del. Feb. 28, 2025) ..........................................12

*Mayer v. Belichick*,
605 F.3d 223 (3d Cir. 2010).....................................................................................................4

*Mayo Collaborative Servs. V. Prometheus Labs., Inc.*,
132 S. Ct. 1289 (2012)...........................................................................................................4

*NEC Corp. v. Peloton Interactive, Inc.*,
C.A. No. 22-987, 2023 WL 8529287 (D. Del. Dec. 8, 2023)................................................13

*OIP Techs., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015)....................8

*Ravgen, Inc. V. Ariosa Diagnostics, Inc.*,
C.A. No. 20-1646-RGA-JLH, 2021 WL 3526178 (D. Del. Aug. 11, 2021) ....................14

*Realtime Data LLC v. Array Networks Inc.*,
No. 2021-2251, 2023 WL 4924814 (Fed. Cir. Aug. 2, 2023) ....................9

*Recentive Analytics, Inc. v. Fox Corp.*,
134 F.4th 1205 (Fed. Cir. 2025) ....................8

*In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*,
311 F.3d 198 (3d Cir. 2002)....................4

*Simio, LLC v. FlexSim Software Prods., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020)....................8

*Sonos, Inc. V. Google LLC*,
No. 21-7559-WHA, 2022 WL 799367 (N.D. Cal. Mar. 16, 2022)....................13

*Twilio, Inc. v. Telesign Corp.*,
249 F. Supp. 3d 1123 (N.D. Cal. 2017) ....................7, 12

*Two-Way Media Ltd. V. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017)....................7

*Velocity Commc'n Techs., LLC v. Oneplus Tech. (Shenzhen) Co.*,
No. 5:25-cv-98-RWS, 2026 WL 1557378 (E.D. Tex. Apr. 13, 2026) ....................13

*WinView Inc. v. DraftKings Inc.*,
C.A. No. 21-13405 (GC) (JTQ), 2025 WL 1908757 (D.N.J. July 11, 2025) ....................15

**FEDERAL STATUTES**

35 U.S.C. § 101....................1, 2, 4, 12

35 U.S.C. § 103(a) ....................2

**FEDERAL RULES AND REGULATIONS**

Fed. R. Civ. P. 12(b)(6)....................3, 8

## I. INTRODUCTION

Juniper Networks, Inc. moves to dismiss two portions of Orckit Corporation's complaint based on pleading-stage defects that the Court can resolve on the face of the Complaint and the asserted patents. First, the Court should dismiss Count Two, Orckit's claim for alleged infringement of U.S. Patent No. 8,830,821 (the "'821 patent"), because that patent claims ineligible subject matter under 35 U.S.C. § 101 and *Alice*. The '821 patent claims are directed to the abstract idea of selecting and switching among network routes based on availability or cost, a longstanding practice that courts have repeatedly held patent-ineligible. The claims also are so broadly written and so untethered to any technological limitation that they raise preemption concerns. Because the '821 patent claims an abstract idea and lacks an inventive concept, the Court should dismiss Count Two with prejudice.

Second, the Court should dismiss Orckit's pre-suit indirect and willful infringement claims because the Complaint fails to plausibly allege that Juniper knew of the asserted patents or of its alleged infringement before Orckit filed the Complaint. The Complaint bases its pre-suit knowledge allegations entirely on a May 2017 letter that does not identify any asserted patent or charge Juniper with alleged infringement. A letter that identifies only a nonasserted patent number and a generalized "patent portfolio" that "includes over 100 patents and pending patent applications" does not plausibly allege pre-suit knowledge of the asserted patents or of alleged infringement, which are required to support pre-suit indirect or willful infringement claims. The Court should dismiss Orckit's pre-suit indirect and willful infringement claims as a result.

## II. BACKGROUND

### A. The '821 Patent

Orckit asserts three patents related to network technology. The '821 patent, relevant to the motion to dismiss under Section 101, is titled "Method for supporting MPLS transport path

recovery with multiple protection entities" and issued on September 9, 2014. D.I. 1-2 (the "'821 patent") . The '821 patent discloses methods and systems for selecting transport entities in a multiprotocol label switching ("MPLS") network. *Id.* at Abstract. As the '821 patent discloses, an "entity" "represents a network route between a first endpoint and a second endpoint." *Id.* at 3:36-37. "Working and protection entities are selected from a set of available entities based upon minimizing the probability of simultaneous failure and/or minimizing a cost function based upon one or more metrics." *Id.* at Abstract.

The '821 patent contains 20 claims. *Id.* On October 22, 2024, the Patent Office issued a Final Written Decision for an *inter partes* review finding all claims except claims 14 through 16 unpatentable under 35 U.S.C. § 103(a). Ex. A.[1] That decision was not appealed, and the time for appeal has expired. Thus, for purposes of Section 101, the relevant claims are independent claim 14 and dependent claims 15 and 16. Claim 14 recites:

> 14. A system for selecting entities within an MPLS network, comprising:
>
> **[a]** a data structure comprising a plurality of transport entity descriptors;
>
> **[b]** an entity protection switch configured to switch between a working entity and a protection entity; and
>
> **[c]** digital logic configured to select said working entity and said protection entity from said plurality of transport entity descriptors, comprising: logic configured to determine a probability of concurrent failure of said working entity and said protection entity;
>
> **[d]** logic configured to determine an entity cost of said plurality of transport entity descriptors; and

---

1 The Court may take judicial notice of the Final Written Decision. *See Digital Media Tech. Holdings, LLC v. Deluxe Media Inc.*, C.A. No. 25-38-JCG, 2025 WL 2720958, at *9 (D. Del. Sept. 24, 2025).

> **[e]** logic configured to reselect said working entity and said protection entity from said plurality of transport entity descriptors upon a reselection event,
>
> **[f]** wherein said reselection event is selected from a group consisting of adding an entity to said plurality of transport entities, removing an entity from said plurality of transport entities, an operational status change for one of said plurality of transport entities, and a change in overall cost for one of said plurality of transport entities.

’821 patent at cl. 14 (subpart labels added for convenience). Dependent claims 15 and 16 recite:

> 15. The system of claim 14 wherein said entity protection switch comprises a 1:1 switch.
>
> 16. The system of claim 14 wherein said entity protection switch comprises a 1+1 switch.

*Id*. at cls. 15 and 16.

### B. Orckit’s May 2017 Letter

The Complaint alleges that Juniper has been aware of the asserted patents since Orckit sent a letter to Juniper’s legal department in May 2017, six years before it filed suit. D.I. 1 ¶ 38. But the letter does not identify any asserted patent. It states only that Orckit “owns a patent portfolio related to communications technologies,” that the portfolio “includes over 100 patents and pending patent applications,” and that the portfolio “may be of interest” to Juniper. D.I. 1-4. The letter identifies a single patent, U.S. Patent No. 7,773,508, which is not asserted. *Id.* The letter also lists nine Juniper product lines, most of which the Complaint does not identify as accused products. *Id*. (identifying EX2200 Ethernet Switch, OCX1100 Open Networking Switches, QFX3100 QFabric Director, MX960 3D Universal Edge Router, ACX500 Universal Access Router, T640 Core Router, SRX100 Services Gateway). The letter makes no reference to alleged infringement. *Id.*

## III. LEGAL STANDARD

Rule 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive dismissal, the complaint must contain sufficient

factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations need not be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Twombly*, 550 U.S. at 555. In assessing plausibility, the Court must accept all well-pleaded factual allegations in the Complaint as true and draw all reasonable inferences in favor of the plaintiff. *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). The Court's review is limited to the allegations in the Complaint, exhibits attached to the Complaint, documents incorporated by reference, and items subject to judicial notice. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## IV. ARGUMENT

### A. The '821 Patent Claims Ineligible Subject Matter Under 35 U.S.C. § 101.

Under Section 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. But "[l]aws of nature, natural phenomena, and abstract ideas are not patentable," *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013), because "such discoveries are manifestations of … nature, free to all men and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012) (internal quotations omitted).

In *Alice*, the Supreme Court articulated a two-step test for identifying claims directed to unpatentable subject matter. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). First, the Court must determine whether the claims are directed to ineligible subject matter. *Id.* If so, the Court then considers "the elements of each claim both individually and as an ordered combination" to determine whether there is an "inventive concept—*i.e.*, an element or combination of elements

that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.” *Id.* at 217-18.

### 1. *Alice* Step One: The ’821 Patent Is Directed to the Abstract Idea of Selecting and Switching Among Network Routes Based on Availability or Cost.

The ’821 patent claims fit comfortably within the line of cases holding that selecting among routes based on availability or cost is an abstract idea. At *Alice* step one, courts look at the “focus” or “basic thrust” of the claims. *See Elec. Power Grp. LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). Here, the claims focus on selecting and switching among network “entities” (i.e., network routes) based on availability or cost. *See* ’821 patent at 3:36-37 (“each entity … represents a network route”). Claim 14 requires an “entity protection switch” configured to switch between a “working entity” and “protection entity,” and “digital logic” configured to “select” and “reselect” the working and protection entities from a plurality of transport entity descriptors. *Id.* at cl. 14. The claim also requires the digital logic to “determine a probability of concurrent failure” and “an entity cost,” but it does not require that selection or reselection be based on those determinations. *Id.* Even if it did, the claims still would be patent-ineligible under *Alice* step one.

The precedent confirms that conclusion. Courts have found analogous route-selection and failover claims abstract, whether the claims turned on availability, cost, or another routing criterion. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016) (instructing courts to “compare [the] claims at issue to those claims already found to be directed to an abstract idea in previous cases”); *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1355 (Fed. Cir. 2024) (one of the “well-settled indicators of abstractness” is “several precedents” in which “broadly analogous” claims are found abstract).

In *OptiMorphix, Inc. v. Akamai Techs., Inc.*, for example, the claims required selecting a first communications link if available, selecting a second link if the first was unavailable, and

reconnecting to another available link if communications were hindered. C.A. No. 24-1336-MN, 2026 WL 221923, at *5 (D. Del. Jan. 28, 2026), *report and recommendation adopted*, 2026 WL 964332 (D. Del. Mar. 12, 2026). The court held that those claims were directed to the abstract idea of "selecting and switching among available communications links." *Id.* at *6.

Likewise, in *Broadcom Corp. v. Netflix Inc.* ("*Broadcom* 2023"), the claims required selecting a primary server when functional and selecting a secondary server when the primary server was non-functional. 677 F. Supp. 3d 1010, 1016, 1023 (N.D. Cal. 2023). The court held that the claims were directed to the abstract idea of "directing requests for web services to an available web server," adding that "this is the concept of 'failover,' which was already known in the art." *Id.* at 1023.

In *Broadcom Corp. v. Netflix Inc.* ("*Broadcom* 2021"), the claims required receiving a request for a service, determining multiple routes for delivering the requested content, and delivering the content over those routes. No. 3:20-cv-04677-JD, 2021 WL 4170784, at *7 (N.D. Cal. Sept. 14, 2021). The court held that the claims were directed to the abstract idea of delivering requested services and content over multiple routes based on user information, comparing the concept to delivering packages using different carriers and routes depending on efficiency and the recipient's preferences. *Id.* at *8.

Cost-based routing fares no better. In *Teliax Tech. LLC v. Affinity Network, Inc.*, the patent disclosed routing toll-free calls through a toll-free exchange to save costs. 636 F. Supp. 3d 1199, 1203-05 (D. Nev. 2022). A party's Responsible Party Identification ("RESPORG ID") associated that party with toll-free calling. *Id.* The court held that the method—receiving a qualifying call, querying a database, and routing the call based in part on the called party's identification—was directed to the abstract idea of routing a call based on the called party's RESPORG ID. *Id.* at 1210.

These decisions all point in the same direction: claims that select among alternative routes based on availability, cost, or a similar criterion are abstract.

Claim 14's functional language confirms the same result. "The purely functional language of [claim 14] further confirms that the claim is directed to an abstract idea." *Broadcom 2021*, 2021 WL 4170784, at *6. Claim 14 recites each element in generic functional terms: an "entity protection switch" is "configured to switch" between a "working entity" and a "protection entity," and "logic" is configured to "determine," "select," and "reselect." '821 patent at cl. 14. But the claim does not explain how the switch, selection, or reselection occurs. Nor does it explain how the logic determines the probability of concurrent failure or entity cost, or how those determinations affect selection or reselection, if at all. Without claim language explaining "how to achieve these results in a non-abstract way," the claim is directed to an abstract idea. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337-38 (Fed. Cir. 2017); *Beteiro*, 104 F.4th at 1356; *Broadcom 2021*, 2021 WL 4170784, at *8.

That conclusion also makes sense as a matter of common experience. The Federal Circuit has "often recognized claims directed to 'a longstanding or fundamental human practice' to be directed to an abstract idea." *GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1064 (Fed. Cir. 2026) (quoting *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1367 (Fed. Cir. 2024)). Maintaining redundant routes and switching to those routes based on cost or availability is such a practice. *See Twilio, Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123, 1144 (N.D. Cal. 2017) ("selecting the best message route" is a "fundamental activity that has long been performed by humans"); *see also Teliax*, 636 F. Supp. 3d at 1212 (recognizing that operators have been routing calls based on costs "for decades"). The '821 patent itself recognizes that "the practice of maintaining redundant

network devices and connections," and switching to the standby network device or connection when a failure is detected, "has become commonplace." '821 patent at 1:24-29.

The Court need not credit the Complaint's conclusory allegations that the '821 patent claims "represented an improvement in computer and communications functionality, performance and efficiency." D.I. 1 ¶¶ 24-25; *see also id.* ¶ 26 (making similarly conclusory allegations that the '821 patent claims present "unconventional apparatuses and methods" and recite "inventive concepts"). Courts must "disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)." *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020). "A statement that a feature 'improves the functioning and operations of the computer' is, by itself, conclusory." *Id*. To survive step one, the "patent has to describe how to solve the problem in a manner that encompasses something more than the principle in the abstract ... [a]nd that solution has to be evident from the claims." *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 533 (Fed. Cir. 2020). That did not happen here. And "relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible." *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015); *Recentive Analytics, Inc. v. Fox Corp.*, 134 F.4th 1205, 1214 (Fed. Cir. 2025) ("[T]he increased speed and efficiency resulting from use of computers (with no improved computer techniques) do not themselves create eligibility.").

Because all claims of the '821 patent are directed to the abstract idea of selecting and switching among network entities based on availability or cost, the Court should proceed to *Alice* step two.

### 2. *Alice* Step Two: The '821 Patent Claims Do Not Recite an Inventive Concept.

*Alice* step two does not save the '821 patent claims. Whether the Court views the claim elements individually or as an ordered combination, no inventive concept transforms the abstract

idea into patent-eligible subject matter. The claims are broadly directed to selecting network routes "in the telecommunications field" using generic steps performed in a logical order, but they remain agnostic as to the specific technology that accomplishes those steps. Indeed, the surviving claims are not even limited to computers. The specification merely states that the exemplary embodiment "for executing the functionality may be a computer." *See* '821 patent at 3:31-32 (emphasis added). The only claims expressly limited to computers are independent claim 17 and dependent claim 18, both of which the Patent Office found unpatentable. *See* '821 patent at cls. 17 & 18 (requiring a "non-transitory computer readable media"). Even if claim 14 were limited to computers, "[t]he Federal Circuit has repeatedly held that implementation via conventional computer components does not add an inventive concept." *B# on Demand LLC v. Spotify Tech. S.A.*, 484 F. Supp. 3d 188, 204 (D. Del. 2020).

The specification confirms the point. It explains that any generic system with "a processor **502**, a storage device **504**, a memory **506** having software **508** stored therein …, input and output (I/O) devices **510** (or peripherals), and a local bus, or local interface **512** allowing for communication within the system 500" will suffice. *Id*. at 6:48-53 (emphasis in original). The processor may be "any custom made or commercially available single core or multi-core processor" or "generally any device for executing software instructions." *Id*. at 6:62-7:3. The memory, storage, input/output devices, and interfaces are described with similar breadth. *Id*. at 6:45-55, 7:4-8, 7:24-33. Those generic implementation options do not supply an inventive concept. *See B# on Demand*, 484 F. Supp. 3d at 204 ("interface" and "memory" not inventive); *Realtime Data LLC v. Array Networks Inc.*, No. 2021-2251, 2023 WL 4924814, at *12 (Fed. Cir. Aug. 2, 2023) ("processor," "memory," and "storage" are well-known generic computer components).

The specification then underscores that breadth: “It will be apparent to those skilled in the art that various modifications and variations can be made to the structure of the present invention without departing from the scope or spirit of the invention.” ’821 patent at 7:39-42. Claims lack an inventive concept where, as here, they are “agnostic as to the specific technology” that performs the claimed functionality. *See OptiMorphix*, 2026 WL 221923, at *6.

The components recited in claim 14 do not change the analysis. The claim identifies a data structure, an entity protection switch, working and protection entities, and digital logic. ’821 patent at cl. 14. But it describes each component by function only. The data structure stores descriptors; the “digital logic” makes determinations and selects or reselects entities based on those determinations; and the “entity protection switch” “switch[es] between a working entity and a protection entity.” “[E]lements that are specified ‘at a high level of generality’ and ‘in functional terms’ … cannot supply an inventive concept.” *In re Healy*, No. 2024-2311, 2025 WL 2248967, at *5 (Fed. Cir. Aug. 7, 2025) (quoting *Elec. Commc’n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1183 (Fed. Cir. 2020)); *Dropbox*, 815 F. App’x at 533 (no inventive concept where claim “recites conventional elements in a purely functional manner, without implementation detail even in the specification”).

The specification adds little technical detail. It explains that, under “exist[ing]” MPLS Transport Path mechanisms, the “working entity” is the “original entity” and the “protection entity” is the “second transport entity.” ’821 patent at 1:46-51. It also states that the entity protection switch “may employ, for example, an MPLS linear protection scheme such as those defined” by the standards-setting body Internet Engineering Task Force (“IETF”). *Id.* at 3:55-62. Applying an abstract idea with conventional and well-understood techniques does not transform the claim into patent-eligible subject matter. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281,

1290-91 (Fed. Cir. 2018); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) (claims that did "not even require a new source or type of information, or new techniques for analyzing it" lacked an inventive concept).

Nor do the claims suggest any unconventional ordering of functions. They recite a logical sequence of determining, selecting, determining, and reselecting. Courts have repeatedly held that this conventional order of determining, selecting, reselecting, and delivering does not provide an inventive concept. *See Broadcom 2023*, 677 F. Supp. 3d at 1024 (no inventive concept when "claims recite a conventional ordering of functions: first selecting a web service to run, then identifying a web server that is available to run the web service, and finally connecting to that web service"); *OptiMorphix*, 2026 WL 221923, at *7 (no inventive concept when claimed steps "follow logical order—*i.e.*, selecting a first communications link if available but selecting the second if the first is not available and reconnecting to the other link if communications become hindered after the original"); *Broadcom 2021*, 2021 WL 4170784, at *8 (no inventive concept when claim "uses a conventional ordering of functional elements: first receiving a request, then determining how to deliver the request, and then delivering the request").

Preemption concerns confirm the same result. As the Federal Circuit explained, "the concern that drives" the judicial exceptions to patentability is "one of pre-emption." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) (quoting *Alice*, 573 U.S. at 216). Claims that "recite 'a specific, discrete implementation of the abstract idea' rather than preempting all implementations of that idea" are less likely to raise preemption concerns at step two. *All Terminal Servs., LLC v. Roboflow, Inc.*, C.A. No. 25-476-WCB, 2025 WL 2576394, at *6 (D. Del. Sept. 5, 2025) (quoting *In re Killian*, 45 F.4th 1373, 1379 (Fed. Cir. 2022)). The '821 patent claims do not recite any such specific implementation. They instead apply an abstract idea

using broad, functional language and conventional and well-understood techniques. But "the abstract idea to which a claim is directed cannot supply the inventive concept." *Dropbox*, 815 F. App'x at 534.

Because the asserted '821 patent claims are directed to patent-ineligible subject matter under Section 101, the Court should dismiss with prejudice Count Two of the complaint alleging infringement of the '821 patent.

### 3. Dependent Claims 15 and 16

Dependent claims 15 and 16 do not change the patent-eligibility analysis. They add only that the entity protection switch must be a 1:1 or 1+1 switch, which are types of protection switches. But the lack of detail in the claims and the specification confirms that these limitations do not add implementation detail, a technological improvement, or an unconventional ordered combination. Dependent claims do not transform an abstract idea into patent-eligible subject matter by "merely provid[ing] additional criteria" for "performance of the same basic process." *Dropbox*, 815 F. App'x at 533; *Broadcom 2021*, 2021 WL 4170784, at *9 (dependent claims patent-ineligible where they do "no more than recite conventional steps implemented using conventional technology"); *Twilio*, 249 F. Supp. 3d at 1146 (dependent claims do not save patent from abstract idea where they add "restrictions on certain elements of claim 1, such as types of channels, types of routing options, how message routing data is updated, and details regarding the delivery and content of the message delivery report"); *Lightning Fitness Sys. LLC v. Precor Inc.*, C.A. No. 24-12-RGA, 2025 WL 662082, at *3 (D. Del. Feb. 28, 2025) (independent claim representative where dependent claims recited "different types, sizes, and shapes" of components); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (independent claim representative where dependent claims added only "well-known, routine, and conventional functions").

### B. The Court Should Dismiss Orckit's Pre-Suit Indirect and Willful Infringement Claims for Failure to State a Claim.

Orckit's pre-suit indirect and willful infringement claims fail for a separate reason: the Complaint does not plausibly allege pre-suit knowledge of the asserted patents or pre-suit knowledge of infringement. Both forms of knowledge are required for indirect infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015). The same knowledge requirement applies to willfulness. *Densys Ltd. v. Align Tech. Inc.*, C.A. No. 25-768-GBW, 2026 WL 1506566, at *15 (D. Del. May 29, 2026); *NEC Corp. v. Peloton Interactive, Inc.*, C.A. No. 22-987, 2023 WL 8529287, at *2 (D. Del. Dec. 8, 2023) ("Claims for induced, contributory and willful infringement all require that the defendant had knowledge of the asserted patents and knowledge that the acts at issue constituted patent infringement.").

The May 2017 letter does not plausibly provide pre-suit knowledge of the asserted patents. *See* D.I. 1 ¶ 38. The letter refers generally to a "patent portfolio related to certain communications technologies" that "includes over 100 patents," but it identifies none of the asserted patents. D.I. 1-4. The only patent it identifies, the '508 patent, is not asserted and is not related to any asserted patent. *Id*. That kind of generalized portfolio notice does not support a reasonable inference that Juniper had pre-suit knowledge of the particular patents Orckit now asserts. *See Duvall Espresso IP Enf't, LLC v. Meticulous Home, Inc.*, C.A. No. 24-22-CJB, 2026 WL 578768, at *15 (D. Del. Mar. 2, 2026) (finding no pre-suit knowledge for the two asserted patents not mentioned in notice letter); *Velocity Commc'n Techs., LLC v. Oneplus Tech. (Shenzhen) Co.*, No. 5:25-cv-98-RWS, 2026 WL 1557378, at *6 (E.D. Tex. Apr. 13, 2026) ("[M]ultiple district courts, post-*Halo*, have held that general knowledge of a patent portfolio without more is insufficient even to plausibly allege knowledge of a particular asserted patent." (quoting *Dialect, LLC v. Bank of Am., N.A.*, No. 2:24-cv-207-JRG, 2024 WL 4980794, at *3 (E.D. Tex. Dec. 4, 2024)); *Sonos, Inc. v. Google LLC*,

No. 21-7559-WHA, 2022 WL 799367, at *2 (N.D. Cal. Mar. 16, 2022) (knowledge of a patent portfolio "not enough" to plead knowledge of the asserted patents).

The Complaint also fails to plausibly allege pre-suit knowledge of infringement. Its only allegation is conclusory: "Juniper knew or should have known that its conduct amounted to infringement of the [asserted] Patent at least because Orckit IP [a predecessor to plaintiff Orckit] notified Juniper of the [asserted] Patent and its infringement of the [asserted] Patent as set forth above." D.I. 1 ¶¶ 67, 83. That allegation appears to refer to the May 2017 letter, but the letter did not identify the asserted patents or accuse Juniper of infringement. As a result, the letter does not plausibly support Juniper's alleged pre-suit knowledge of infringement.

To survive a motion to dismiss, a complaint must allege "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The Complaint must include sufficient factual matter to state a claim for relief "that is plausible on its face." *Iqbal,* 556 U.S. at 678. Here, Orckit's conclusory allegations simply recite purported pre-suit knowledge of infringement without reciting facts making that inference plausible. *See Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.*, C.A. No. 19-1239-CFC, 2020 WL 4365809, at *2 (D. Del. July 30, 2020) (dismissing indirect infringement claims where pre-suit knowledge allegations merely recited the legal requirements); *Cleveland Med. Devices Inc. v. ResMed Inc.*, 696 F. Supp. 3d 4, 11 (D. Del. 2023) (granting motion to dismiss because patentee "may not depend on conclusory allegations to state a willfulness claim").

Nor can Orckit bridge the gap by relying on alleged knowledge of a patent alone. Courts in this District have repeatedly held that knowledge of alleged infringement does not automatically follow from knowledge of asserted patents. *See Ravgen, Inc. v. Ariosa Diagnostics, Inc.*, C.A. No. 20-1646-RGA-JLH, 2021 WL 3526178, at *3 (D. Del. Aug. 11, 2021). Thus, even if Orckit had

plausibly alleged pre-suit knowledge of the asserted patents (which it did not), its failure to plead facts showing Juniper's alleged pre-suit knowledge of infringement independently warrants dismissal of the pre-suit indirect and willful infringement claims. *See*, *e.g.*, *WinView Inc. v. DraftKings Inc.*, C.A. No. 21-13405 (GC) (JTQ), 2025 WL 1908757, at *10, *12 (D.N.J. July 11, 2025) (dismissing pre-suit indirect and willfulness claims despite pre-suit knowledge of the asserted patents because the complaint "does not provide sufficient allegations for the Court to infer [defendant's] knowledge of infringement"); *CG Tech. Dev., LLC v. William Hill U.S. Holdco, Inc.*, 404 F. Supp. 3d 842, 852 (D. Del. 2019) (dismissing pre-suit willful and induced infringement claims despite plausible allegations that defendants had pre-suit knowledge of all asserted patents, because "Plaintiff has failed to sufficiently plead pre-suit knowledge of patent infringement"). The Court should therefore dismiss Orckit's pre-suit indirect and willful infringement claims.

## V. CONCLUSION

For the foregoing reasons, Juniper respectfully requests that the Court dismiss with prejudice Count Two, Orckit's claim for alleged infringement of the '821 patent, and dismiss Orckit's pre-suit indirect and willful infringement claims.

Date: August 18, 2026

**DLA PIPER LLP (US)**

<u>/s/ *Angela C. Whitesell*</u>

Angela C. Whitesell (DE Bar No. 5547)
Matthew S. Middleton (DE Bar No. 6877)
1201 North Market Street, Suite 2100
Wilmington, DE 19801-1147
Telephone: (302) 468-5700
angela.whitesell@us.dlapiper.com
matthew.middleton@us.dlapiper.com

Sean C. Cunningham (*Pro Hac Vice*)
Erin P. Gibson (*Pro Hac Vice*)
Helena D. Kiepura (*Pro Hac Vice*)
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, D.C. 20004
Telephone: (202) 799-4000
sean.cunningham@us.dlapiper.com
erin.gibson@us.dlapiper.com
helena.kiepura@us.dlapiper.com

Jennifer L. Nall (*Pro Hac Vice*)
**DLA PIPER LLP (US)**
303 Colorado Street, Suite 3000
Austin, Texas 78701-4653
Telephone: (512) 457-7249
jennifer.nall@us.dlapiper.com

Tessa Duxbury (*Pro Hac Vice*)
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California
Telephone: (310) 595-3287
tessa.duxbury@us.dlapiper.com

Ankur Desai (*Pro Hac Vice*)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, New York 10020-1104
Telephone: (212) 335-4711
ankur.desai@us.dlapiper.com

Nan Lan (*Pro Hac Vice*)
**DLA PIPER LLP (US)**
1900 N. Pearl St., Suite 2200
Dallas, Texas 75201-2482
Telephone: (214) 743-4569
nan.lan@us.dlapiper.com

*Attorneys for Defendant Juniper Networks, Inc.*